No. 98-666

IN THE SUPREME COURT OF THE STATE OF MONTANA

2000 MT 49N

STATE OF MONTANA,

Plaintiff and Respondent,

v.

DARELL McDONALD,

Defendant and Appellant.

APPEAL FROM: District Court of the Third Judicial District,

In and for the County of Granite,

The Honorable Ted L. Mizner, Judge presiding.

COUNSEL OF RECORD:

For Appellant:

Kenneth H. Gray; Jackson & Rice, Helena, Montana

For Respondent:

Hon. Joseph P. Mazurek, Attorney General; John Paulson,

Assistant Attorney General; Helena, Montana

J. Allen Bradshaw, Granite County Attorney; Philipsburg, Montana

Submitted on Briefs: December 29, 1999

Decided: February 24, 2000

Filed:

_____

Clerk

Justice W. William Leaphart delivered the Opinion of the Court.

¶1.Pursuant to Section I, Paragraph 3(c), Montana Supreme Court 1996 Internal Operating Rules, the following decision shall not be cited as precedent but shall be filed as a public document with the Clerk of the Supreme Court and shall be reported by case title, Supreme Court cause number and result to the State Reporter Publishing Company and to West Group in the quarterly table of noncitable cases issued by this Court.

¶2.Appellant, Darell McDonald (McDonald) was charged in Granite County Justice Court with the following offenses: (1) hunting a bull elk without a proper license; (2) failure to wear the required orange-colored garments while hunting; (3) five counts of shooting more than one game animal; (4) creating a hazard in the act of game hunting; and (5) obstructing justice. Following a bench trial in justice court, McDonald was convicted of the first four charges and acquitted of the fifth charge. McDonald then appealed to the District Court for a trial de novo. The jury in District Court returned a verdict of guilty as to all charges except one of the five counts of shooting more than one game animal. McDonald appeals from the judgment of conviction.

¶3.On appeal, McDonald raises one issue: "[w]hether the prosecutor's closing argument was such a violation of Mr. McDonald's due process rights that it amounts to plain error as a matter of law."

¶4.McDonald cites the Court to thirteen instances in the prosecutor's closing argument where he allegedly either vouched for certain witnesses or called other witnesses liars.

The witnesses that I believe the State of Montana presented don't have any personal bias or personal goal or desire or reason to say or do what they've done. . . . And there's been nothing to be presented to you folks that I can remember that would indicate that there is any suggestion that any of those witnesses would be biased or have some sort of ulterior

motives for wanting to do anything here other than to tell the truth as they saw it.

Now conversely I believe that the Defendants themselves have considerable to gain or lose depending on the outcome of this case. . . .. . . .

. . . So, I'm suggesting I guess, that I believe that there's considerable contrivance in the acquisition of those statements.

. . . . [E]very one of these witnesses conveniently were looking at their watches just at the right time. That seems a little contrived and coincidental to me. . . .. . . .

. . . Now all of which I contend is a contrivance and a concoction and never occurred.

. . . That's a totally new one. . . .

. . . So we make this story up . . . .

. . . .

. . . [E]verything is calculated to corroborate this concoction about a phantom dark pickup. All of these witness statements a year later were all designed to give some sort of credence to that nonsensical story. . . .

. . . .

. . . I suggest that it's an insult to all of our intelligence to even suggest that.

. . . [T]hese Defendants first contrived their story about a phantom vehicle . . . .. . . .

Then we have the mysterious bullet that appears, to my knowledge, like more than a year later. Totally after the other trial. Where's it been? Where did it come from? What credibility does it have? None, as far as I'm concerned. I'm not going to consider some bullet that suddenly we hear about after over a year, along with these other contrivances, being anything to do with this event.

So that, it boils down to credibility. And I'm certain you know where I think the credibility is not.. . . .

. . . I'm asking you to consider that the Defendants can not be believed and should not be believed. That's outrageous. Thank you.. . . .

And Mr. Garlati [a defense witness], who I think, as far as I'm concerned told the truth totally, said that the interval was just a matter of seconds. . . .

¶5.McDonald acknowledges that he did not contemporaneously object to any of the alleged improprieties in the argument. Recognizing that a defendant's failure to object to a prosecutor's closing argument precludes appellate review, § 46-20-104(2), MCA, and State v. Losson (1993), 262 Mont. 342, 865 P.2d 255, he submits that the improper argument constitutes "plain error" under our holding in State v. Finley (1996), 276 Mont. 126, 915 P.2d 208.

¶6.In *Finley*, we clarified the common law plain error doctrine and upheld our discretionary power to review claimed errors which implicate a criminal defendant's fundamental constitutional rights, even if no contemporaneous objection is made in circumstances where failure to review the claimed error may result in a manifest miscarriage of justice, may leave unsettled the fundamental fairness of the trial, or may compromise the integrity of the judicial process. *Finley*, 276 Mont. at 137-38, 915 P.2d at 215. In both *Finley* and State v. Sullivan (1996), 280 Mont. 25, 927 P.2d 1033, we invoked this discretionary power to review claims of prosecutorial misconduct that implicated the defendant's constitutional privilege against self-incrimination.

¶7.The common law plain error rule is reserved for "exceptional cases" and is to be used sparingly. State v. Miller, 1998 MT 177, ¶ 36, 290 Mont. 97, ¶ 36, 966 P.2d 721, ¶ 36. In contrast to *Finley* and *Sullivan*, the present appeal does not involve improper comment by a prosecutor on a defendant's post-arrest silence, thereby implicating the defendant's constitutional privilege against self-incrimination.

¶8.In his reply brief, McDonald relies heavily upon a decision by the Ninth Circuit Court of Appeals, Dubria v. Smith (9th Cir. 1999), 197 F.3d 390, in which the court condemns improper closing arguments by the prosecutor. However, that decision was in the context of analyzing an ineffective assistance of counsel claim wherein the court concluded that counsel's failure to object to closing argument fell below the objective standard of reasonable representation. *Dubria*, 197 F.3d at 402. As McDonald concedes, he has not raised an issue on appeal as to ineffective assistance of counsel and thus we do not address the closing argument in that context.

¶9. The issue before this Court is not whether counsel was ineffective in failing to object but rather whether the prosecutor's arguments constitute plain error. We are not convinced that failure to review the alleged errors would result in a manifest miscarriage of justice, would leave unsettled the fundamental fairness of the trial, or would compromise the integrity of the judicial process. McDonald does not point to any exceptional circumstances that would remove his case from the general prohibition against raising objections to closing arguments for the first time on appeal and that would warrant our review of the matter under the common law plain error doctrine.

¶10. The judgment of the District Court is affirmed.

/S/ W. WILLIAM LEAPHART

We concur:

/S/ J. A. TURNAGE

/S/ TERRY N. TRIEWEILER

/S/ JIM REGNIER

/S/ WILLIAM E. HUNT, SR.